ENTERED ON DOCKET

MAY 17 2006

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re: | Chapter 13 |
| Daniel Roche and Juliana Roche, | Case No. 05-63544-MGD |
| Debtors. | Judge Diehl |
| Juliana Roche, | Adversary Proceeding |
| Plaintiff, | No. 05-09040 |
| v. | |
| Pep Boys, Inc. f/k/a Pep Auto Supply Company, a/d/b/a The Pep Boys-Manny, Moe & Jack Inc., and Simpson Law Offices, LP, | |
| Defendants. | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW
WITH RESPECT TO DAMAGES

On December 30, 2005, this Court entered an Order denying Defendants' Motion for Summary Judgment and granting, in part, Plaintiff's Motion for Summary Judgment. A trial on the issue of damages was held March 6, 2006. After hearing the evidence and considering the arguments of the parties, the Court enters these findings of fact and conclusions of law. A Judgment in favor of Plaintiff in the amount of $16,063.36 shall be entered contemporaneously with this Order.

1

The Court has previously held that Defendants violated the automatic stay by failing to release the garnishment which had been placed on a bank account which was titled jointly in the names of Juliana Roche ("Plaintiff" or "Debtor") and her son, Daniel Roche, Jr. The damages resulting from that stay violation claimed by Plaintiff consist of (1) monetary damages, (2) damages for emotional distress and (3) attorney's fees incurred in connection with addressing Defendants' violation of the automatic stay.

Plaintiff's claim is asserted under 11 U.S.C. § 362(h) as in effect on February 24, 2005 when this Chapter 13 case was filed.[1] That section provided:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages.

The Court determined in its December 30, 2005 Order that punitive damages were not appropriate under the circumstances of this case.

### FINDINGS OF FACT

On January 30, 2005, Defendants[2] served a summons of garnishment on Lockheed Georgia Employees Federal Credit Union ("Lockheed") in an effort to collect a judgment which had been rendered against Debtor in the State Court of Cobb County in May 2003. Debtor

---

[1] On October 17, 2005, the Bankruptcy Code was amended and the text of this provision was changed slightly and was renumbered as 11 U.S.C. § 362(k).

[2] As in the Court's prior Order, no distinction will be drawn between the two Defendants named in this action because the Complaint does not distinguish between the actions of the Defendants and Defendants have filed joint pleadings, appeared through the same counsel, and have made no attempt to raise separate defenses. Indeed, at the trial, counsel for Defendants (who is a member of the law firm named as one of the Defendants) indicated that his firm was not charging a fee for the joint representation.

maintained a joint checking account with her son, Daniel Roche, Jr., at Lockheed. Debtor and her son first became aware that the account had been frozen as a result of the garnishment in late February when Debtor was unable to utilize her ATM card at a gas station and then at a grocery store.[3] Debtor and her husband, Daniel Roche (jointly "Debtors"), were experiencing financial problems at the time as a result of the failure of a family business and had several judgments against them individually arising out of that business failure.

Shortly thereafter, Debtors sought legal counsel from Cristina Kaiden and Robert Kaiden. It was determined that a Chapter 13 bankruptcy case would be filed and Debtors then filed their Chapter 13 petition on February 24, 2005. Debtors anticipated that the garnishment would be lifted when their Chapter 13 was filed, based upon advice of counsel. Ms. Kaiden notified Defendants of the filing of the Chapter 13 case and requested the release of the garnishment. Defendants refused. On March 1, 2005, counsel left the country for a scheduled family vacation and did not return until March 14, 2005. Upon counsel's return, this Adversary Proceeding was filed on March 22, 2005. An emergency hearing was held on March 29, 2005 and Defendants were ordered to release the garnishment. Defendants filed a dismissal of the garnishment action on March 29, 2005. At that point, Debtor had access to the funds in her account, although it took a day or two to actually secure the funds.

During the period from February 24, 2005 to March 30, 2005, Debtors were deprived of the approximately $443 balance in Plaintiff's Lockheed account. As a result of not having access to the funds, Debtors testified that they incurred a modest amount of late charges on their utility

---

[3]While Defendants served the garnishment on January 31, 2005, both Debtors testified that they had access to the bank account through ATM withdrawals and that they wrote checks against the account without incident until late February 2005.

accounts.[4] Debtors, Daniel Roche, Jr., and Demerit Reyes, a personal friend of Plaintiff, all credibly testified that Plaintiff's emotional state was adversely affected by her inability to access the funds in her account during this period. Daniel Roche, Jr. testified that he witnessed his mother crying and that she was nervous, weary and scared. Daniel Roche testified that the money in the account was the proceeds of Plaintiff's pay check and that at that time, those funds were the only regular source of income for the family. Debtors had to resort to borrowing funds from their church and from relatives to pay for basics such as food and gasoline for Plaintiff's car. The budget for their Chapter 13 case was very tight and the inability to access the small amount of cash in the Lockheed account meant that the family had very little food and no money for school lunches. Demerit Reyes, who described herself as a close friend of Plaintiff, testified that Plaintiff was very nervous and stressed, particularly while her attorneys were out of town. Plaintiff was concerned that her lights or water would be cut off because she was unable to pay the bills. Ms. Reyes loaned the Plaintiff $25 so that Plaintiff could put gas in her car and be able to go to her job.

Plaintiff testified that she could not sleep at night and was very depressed during the day. She was highly embarrassed at having to ask her church, her friends and her relatives for money. In fact, she avoided going to church during this time because of her embarrassment. Debtor Daniel Roche testified that the bankruptcy was supposed to provide a "release valve" from the financial pressures they had experienced but the continuation of the garnishment prevented that

---

[4]While no utility bills were placed into evidence, the testimony of the Debtors that late charges were paid is sufficient as a matter as to which Debtors have personal knowledge. Fed. R. Evid. 602.

4

easing of pressures. Plaintiff's attorney indicated that $10,000 was sought for the emotional distress.

With respect to the attorney's fees incurred, Plaintiff tendered the Affidavit of Robert Kaiden and Cristina Kaiden (P-1). Counsel for Defendant cross examined both Affiants. Debtors agreed to pay a fee of $2500 for the filing and prosecution of their Chapter 13 case. Of this amount, $900 was paid in advance of the case being filed and the balance was to be paid through disbursements from the Chapter 13 Trustee during the life of the Chapter 13 Plan. Additionally, Plaintiffs understood that Affiants would seek an award of attorney's fees from this Court in connection with this Adversary Proceeding.

The Affidavit includes a detail of 56.3 hours spent in connection with the prosecution of the Adversary Proceeding. Additionally, Mr. Kaiden testified that an additional 3 hours had been spent after the Affidavit was executed in preparation for the trial and that fees were also sought for participation in the trial. Mr. Kaiden stated in his place that the trial day began at 8:30 a.m. The Court notes that the trial concluded at 1:20 p.m. Two short breaks, totaling twenty minutes were taken. In response to a question from the Court, Mr. Kaiden indicated that in instances where he and Ms. Kaiden both participated in a trial or meeting, only a single charge was made. The time by each Affiant was billed at the rate of $250 per hour.

Defendant did not offer any testimony, but did tender Defendants' Exhibits 1 through 5 which were admitted into evidence.

CONCLUSIONS OF LAW

Section 362(h) creates a statutory remedy for individuals who are injured by a violation of the automatic stay. As set out above, the language of the section provides that the injured

individual "shall recover" actual damages. The choice of these words indicates that the intention was to make the award of actual damages mandatory upon the finding of a willful violation. *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (B.A.P. 9th Cir.1995). The only issue for the Court, therefore, is determining the amount of damages that are recoverable.

Actual Damages. With respect to economic damages, Debtor and Daniel Roche testified that late fees were incurred for utility bills in the amounts of $10 to $25 each for three bills. While they did not present copies of the bills, both Debtor and Daniel Roche presented consistent, persuasive and uncontradicted testimony of the late charges, despite extensive cross examination on the issue. There is no requirement that a threshold level of economic damages be incurred for a plaintiff to recover actual damages. In *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 9 (B.A.P. 9th Cir. 2002), the Court determined that five dollars in travel expense to her attorney's office was sufficient to support an award of actual damages. This is consistent with the concept of actual damages being compensation for proven injury or actual loss. Plaintiff is awarded actual damages in the amount of $55.

Damages for Emotional Distress. Damages for emotional distress have also been held to be recoverable under Section 362(h). Since Section 362(h) limits the recovery of damages to "individuals," it has been noted that Congress was thereby signaling its "special interest in redressing harms that are unique to human beings." *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1146 (9th Cir. 2004). The legislative history of the 1978 Bankruptcy Reform Act supports this view: "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a

6

repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." H.R.Rep. No. 95-595 at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97; *see also* S.Rep. No. 95-989, at 54-55 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41. Thus, both the financial and non-financial protections afforded by the automatic stay were important considerations in the enactment of Section 362. Providing a remedy for the non-financial aspects of a violation of the stay furthers the goals of the statute. This is also consistent with the award of damages for emotional distress under other federal statutes which are designed for the protection of individuals and which allow for recovery of actual damages such as The Fair Debt Collection Practices Act and the Equal Credit Opportunity Act. *See Guimond v. Trans Union Credit Info. Co..*, 45 F.3d 1329, 1332-33 (9th Cir. 1995) and *Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982).

While some courts allow for the recovery of damages for emotional distress only when accompanied by economic injury [*See, e.g., Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)], that issue is not presented here since Plaintiff has proved the existence of economic injury, albeit slight. While some courts have held that emotional damages are not recoverable, the facts of those cases often involve so-called "technical" violations of the automatic stay where no actual deprivation of property has occurred. Thus, for example, the same Court awarded monetary damages for emotional distress in cases where the IRS had levied upon the debtors' bank accounts [*Davis v. United States, IRS (In re Davis)*, 201 B.R. 835 (Bankr. S.D. Ala. 1996)] or seized a tax refund [*Matthews v. United States (In re Matthews)*, 184 B.R. 594 (Bankr. S.D. Ala. 1995)], but denied emotional distress damages where the stay violation was a notice of intent to levy without seizure [*In re Parker*, 279 B.R. 596 (Bankr. S.D. Ala.

7

2002)] or threatening letters sent to debtor with no other action [*In re Bryant*, 294 B.R. 791 (Bankr. S.D. Ala. 2002)].

The facts of this case involve the actual deprivation of Plaintiff's property. Defendants' refusal to release the garnishment caused Plaintiff to be without the use of the $443 in her checking account for a period of thirty-four days. While the fact that Plaintiff's attorneys had a leave of absence for fourteen days during this period may have resulted in some delay in seeking relief from the Court, Defendants failure to release the garnishment was the proximate cause of Plaintiff's inability to pay for groceries and gasoline and the attendant stress, depression and sleep irregularity.

Proof of damages for emotional distress is the subject of numerous court opinions. Some cases rely on corroborating medical evidence. *See, e.g., In re Briggs*, 143 B.R. 438, 463 (Bankr. E.D. Mich. 1992). Others allow the testimony of non-experts such as relatives of the injured party or friends to establish a significant level of compensable anguish. *See, e.g., Varela v. Quinones Ocasio (In re Quinones Ocasio)*, 272 B.R. 815, 821-22 (B.A.P. 1st Cir. 2002). If the conduct of the creditor is egregious enough, some courts presume a significant enough level of emotional distress. *See, e.g., In re Wagner*, 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987). Finally, some courts find that the facts, even if not particularly egregious, are such that it is obvious that a reasonable person would have suffered emotional distress. *See, e.g., Bishop v. U.S. Bank/Firstar Bank, N.A. (In re Bishop)*, 296 B.R. 890, 895 (Bankr. S.D. Ga. 2003). Here, Plaintiff did not offer any medical corroboration but did provide the testimony of her family members and friends with respect to her emotional condition and the embarrassment she suffered when her debit card was refused and she was forced to borrow funds from her church, her relatives and her friends.

While the amount involved was relatively small, the impact on the Plaintiff was substantial and must be contrasted with the lack of any advantage to be gained by Defendants from continuing the garnishment. Even without the adversary proceeding here, Defendant's garnishment lien was avoidable under 11 U.S.C. § 522(f) and indeed was avoided in this case. Plaintiff will be awarded $1000 damages for her emotional distress caused by Defendants' actions.

Attorney's Fees. Section 362(h) provides for the award of attorney's fees in the same mandatory fashion as it provides for the award of other types of actual damages. Plaintiff seeks the sum of $14,283.36, representing the fees and costs charged by her attorneys for the period February 25, 2005 through February 28, 2006, plus additional time for trial preparation and the conduct of the trial (7.5 hours). An itemized statement of these charges was admitted into evidence as Plaintiff's Exhibit No. 1. Defendant contends that certain of the itemized fees are not attributable to the actions of the Defendants but were part and parcel of the attorneys' obligations in connection with the prosecution of the Chapter 13 case. Additionally, Defendants argue that their liability for attorney's fees should terminate on the date on which they released the garnishment (March 29, 2005). Finally, Defendants argue that since Plaintiff's agreement with her counsel does not involve personal liability for fees to the extent that they are not awarded by the Court, no actual damages have been incurred by Plaintiff and, therefore, the fees are not recoverable.

Reasonableness of the Fees. The analysis which the Court must apply is the same analysis which is used in determining fee awards under Sections 330(a)(1)(A) and (B) of the Bankruptcy Code. The factors involved in this review are those set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974) and include:

9

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill required to perform the service properly;
(4) the preclusion of other employment due to acceptance of the case;
(5) the customary fee for similar work in the community;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the professional;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship of the client; and
(12) the awards in similar cases.

*Id.* at 717-719.

Plaintiff's Exhibit 1 includes an analysis of each of these factors and Defendants take substantial issue only with the "time and labor involved," contending that a number of the itemized charges are not properly allocable to this adversary proceeding. The Court agrees that certain of the items shown should be subsumed in the $2500 fee which Plaintiff's counsel charged for the filing and prosecution of the underlying Chapter 13 case or are administrative services which are not compensable.[5] These include:

| Date | Atty | Hrs | Description |
|------|------|-----|-------------|
| 2-25 | CK | 0.1 | Notice of Bankruptcy filing (Mailed and Faxed) |
| 2-25 | CK | 0.1 | Voicemail requesting release of garnishment |
| 3-18 | CK | 1.2 | Motion to Avoid Lien of Pep Boys |
| 3-22 | CK | 0.4 | Response to Motion to Avoid Lien of Pep Boys filed by Simpson |
| 3-24 | CK | 0.2 | Certificate of Service of Summons and Complaint to Pep Boys |
| 3-24 | CK | 0.2 | Certificate of Service of Summons and Complaint to Simpson |
| 3-24 | CK | 0.2 | Certificate of Service of Complaint to Chapter 13 Trustee |
| 3-25 | RK | 0.2 | Fax 15 page Notice to Simpson re: Emergency Hearing |
| 3-25 | RK | 0.2 | Fax 15 page Notice to Trustee re Emergency Hearing |

---

[5]Plaintiff's counsel stated that his law firm had two attorneys and no support staff. The choice not to employ administrative assistance does not mean that all time which the attorneys spend is compensable as professional time. Thus, the Court will not allow time spent on administrative tasks such as faxing documents to be charged at the $250 per hour rate. The Court takes note of the fact that Defendants did not take issue with the reasonableness of the $250 per hour rate.

10

|  |  |  |  |
|---|---|---|---|
| 3-29 | RK | 0.1 | Dismissal of Garnishment Summons |
| 3-30 | RK | 0.1 | Order-Dismissal of Garnishment |
| 4-12 | CK | 0.1 | Withdrawal of Motion to Avoid Lien of Pep Boys Filed by Simpson |
| 4-18 | CK | 0.1 | Order Avoiding Lien of Pep Boys |
| 7-13 | RK | 0.1 | Certificate of Service of Order |
| 1-1 | RK | 0.1 | Certificate of Service of Order |
| 1-12 | RK | 0.1 | Certificate of Service of Notification of Appeal Requirements |
| 2-1 | RK | 0.1 | Certificate of Service of Order. |

Additionally, Christina Kaiden testified that one hour of time had been charged in connection with the Count of the Complaint which sought damages under the Fair Debt Collection Practices Act. That claim was withdrawn when Plaintiff's attorney was advised by Defendants' counsel that the debt was not a consumer debt subject to the act. Thus, the Court will not allow $1150 of the fees requested as they were not necessary or reasonable for the matters at issue in this adversary proceeding. All expenses are allowable under the *Johnson* standards.

Fees for the Period After Dismissal of the Garnishment. Defendants dismissed the garnishment summons (as they were ordered to do by this Court) on March 29, 2005. They therefore contend that any attorney's fees generated after that date should not be chargeable against them because the stay violation had ended at that point. This argument ignores the very important fact that Plaintiff was forced to continue to litigate this matter to recover her damages for the stay violation: the end to the violation did not provide the relief which is mandated by Section 362(h). This is the consistent holding of other courts on this issue, which note that even fees expended on an appeal are compensable. *In re Roman,* 283 B.R. 1, 9-10 (B.A.P. 9th Cir. 2002); *Beard v. Walsh (In re Walsh),* 219 B.R. 873 (B.A.P. 9th Cir. 1998) (actual damages include fees for appeal of order finding stay violation, even if appeal is non-frivolous); *In re*

11

*Omine,* 329 B.R. 343 (Bankr. M.D. Fla. 2005); *In re Joslyn,* 75 B.R. 590, 593 (Bankr. D.N.H. 1987) ("attorneys' fees do not stop accruing under § 362(h) as of the collateral recovery date"); *Headrick v. Dep't. of Revenue (In re Headrick),* 285 B.R. 540 (Bankr. S.D. Ga. 2001) ([Debtors] "were entitled to attorney fees and costs for prosecuting the stay violation, including all representation before this court and all appeals"). For the Court to adopt the rule urged by Defendants would essentially gut the remedy afforded by Section 362, since a creditor could prolong litigation over the damages issue with the knowledge that a debtor's attorney would be frequently "working for free" after the stay violation itself ended. Section 362(h) can have no real meaning if it is not read to support the ability of a debtor to have legal representation to recover the damages at issue.

Defendant also argues that Defendant's Exhibit 5 (March 31, 2005 letter to Robert Kaiden from James Martin) is evidence that Defendants attempted to negotiate a resolution of the matter and that Plaintiff's counsel did not respond to the letter but instead continued the litigation. Defendant then states that fees should not be allowed after this point in time. This argument fails for several reasons. First, contrary to Defendants' argument, the letter did not request a response. After setting out the status of negotiations, it concludes "I will communicate with you after having discussed this matter with my client." Plaintiff would be justified in awaiting further communications from Defendants. Second, the attorney time expended on this matter was a direct result of Defendant filing a motion to dismiss which was converted to a motion for summary judgment and Plaintiff's counsel being required to respond to those motions. Consumer protection statutes frequently provide for an award of attorney's fees so that an attorney representing a consumer client can take appropriate action to protect her client's

12

rights even where the amount in controversy is small. Defendant's theory would effectively foreclose an attorney from representing a client in an ethical manner.

<u>Effect of Plaintiff's Agreement on Attorney's Fees.</u> Section 362(h) provides for the mandatory award of attorney's fees incurred as a result of a violation of the automatic stay which injures an individual. As such, it is a "fee-shifting statute." Plaintiff testified that her agreement with her attorney was that he would accept as compensation whatever fees were awarded by the Court and that she would have no independent liability for those fees. This statutory mechanism assures the availability of legal representation for parties where the amount in controversy is small and where the likely victims (here, individuals who are debtors in bankruptcy) could not otherwise afford to enforce their rights. Defendants' proposed standard would turn Section 362(h) on its head since it would require a victim of a section 362(h) violation to agree to pay the attorney's fees for remedying that violation as a pre-condition to recovery of fees from the violator and to be obligated for those fees even if a court found no compensable violation. The Court will not adopt that standard. Plaintiff is entitled to the sum of $15,008.36 as the attorney's fees component of the actual damages she incurred.

**IT IS HEREBY ORDERED** that Plaintiff shall recover from the Defendants, jointly and severally, the sum of $16,063.36. A separate Judgment will be entered contemporaneously herewith.

This __16th__ day of May, 2006.

_Mary Grace Diehl_
Mary Grace Diehl
United States Bankruptcy Judge